## Swineford National Bank v. Beckenbaugh

*Thomas C. Clark,* for plaintiff.

*John McLaughlin,* for defendant Edward C. Enterline.

KREHEL, *P.J.,* January 19, 1984—Before this court is plaintiff's motion for issuance of a writ of seizure. At a hearing held on January 16, 1984, of which all parties were notified and at which they were afforded the opportunity to appear, plaintiff and defendant Edward C. Enterline presented oral arguments which have been duly considered.

The narrow issue to be decided is whether plaintiff is entitled, pursuant to a security agreement between it and defendant Wayne R. Beckenbaugh, Sr., to repossess a 1978 Dodge Ramcharger presently in the possession of defendant Enterline due to defendant Beckenbaugh's failure to continue payments on his personal loan note executed in conjunction with the aforementioned security agreement.

Plaintiff has argued that it is entitled to possession of the vehicle because it held a perfected security interest under § 1132(b) of the Vehicle Code, 75

P.S. §101 et. seq., prior to defendant Enterline's having obtained possession of the vehicle.

Defendant Enterline has argued that he obtained possession of the vehicle as a buyer in the ordinary course of business within the meaning of 12A P.S. §1-201(9) and that, accordingly, he took the vehicle free of plaintiff's security interest under §9-307 of the Pennsylvania Uniform Commercial Code-Secured Transactions, 12A P.S. §9-101 et seq.

The parties at the hearing were in agreement as to the facts. Defendant Beckenbaugh obtained a personal loan from plaintiff and pledged the 1978 Dodge Ramcharger as collateral. He thereafter transferred possession of the vehicle to Gene Kolesar Dodge, a car dealership, from whom defendant Enterline purchased the vehicle for which he paid cash and traded a vehicle of his own. Defendant Beckenbaugh has since discontinued making the payments due on his personal loan-note.

It is the opinion of this court that plaintiff's secured interest in the vehicle is not defeated by defendant Enterline's purchase of the vehicle from Kolesar. While defendant Enterline is certainly a buyer in the ordinary course of business under the Pennsylvania Uniform Commercial Code, he does not enjoy the protection of 12A P.S. §9-307(1) or (2).

Section (1) provides in pertinent part that a buyer in ordinary course of business takes free of a security interest created by *his* seller. (Emphasis supplied.) Defendant Enterline's seller, Gene Kolesar, *did not create* the security interest in the vehicle involved herein. We believe that in enacting section 9-307(1), the legislature intended to protect the person who purchases a product out of the inventory of a business which has pledged its inventory as collateral from the holder of the security interest in the

event the business defaults on its loan which would be, of course, in no way the fault of the purchaser. (Emphasis supplied.)

Section (2) does not apply because under 12A P.S. §9-302(3)(b), the filing provisions of the Uniform Commercial Code-Secured Transactions do not apply to motor vehicles because perfection of a security interest in a motor vehicle is provided for in 75 P.S. 1132(b). See Comment 3 to 12A P.S. §9-307.

Defendant Enterline has referred the court to the cases of Carr v. Keller, 74 D.&C. 2d 534 (1976) and Hadid v. Budget Rent-a-Car of Allentown, Inc., 22 D.&C. 3d 349 (1982), as standing for the proposition that he, as a buyer in the ordinary course of business, should prevail in this matter. Those cases are distinguishable from the instant situation. In each of those cases, the owner of a vehicle entrusted the vehicle to a car dealership which in turn sold the car to a purchaser but failed to compensate the prior owner. The courts in both cases did conclude that the purchasers of the vehicles were entitled to receive certificates of title from the prior owners.

Those cases, however, were decided under §2-403 of the Pennsylvania Uniform Commercial Code—Sales, 12A P.S. §2-101 et seq., rather than under the Pennsylvania Uniform Commercial Code—Secured Transactions. Section 2-403 protects a purchaser who buys goods from a merchant from the original owner who delivered those goods to that merchant to be sold. Section 2-403(4) expressly provides that the rights of other purchasers of goods are governed by, as relevant here, the Articles on Secured Transactions.

Beyond mere technicalities of which statutory sections apply and how they apply, this court sees a rational basis premised on fundamental fairness

and equity, why the result should be different here than in those cases cited by defendant.

In each of those cases, an owner of a vehicle entrusted that vehicle to a car dealer to be sold. That owner could have fully protected himself by being certain of his payment before entrusting his vehicle to the dealer. He failed to do so. The subsequent purchaser of the vehicle could have fully protected himself by establishing that the dealer had proper title to the vehicle before paying for it. He failed to do so.

In assessing who should win between two somewhat negligent parties in the battle for equitable possession and legal title to the vehicle, it appears that the legislative intent is based upon a notion that the original owner is more culpable that the purchaser who reasonably believes from circumstances presented to him that the dealer has the right to sell him the vehicle.

In our American tradition, the dealers in motor vehicles or horseless carriages became the successors to the traders of branded horses, and the loan on the purchase became the lien of encumbrance. Here, plaintiff has taken every reasonable step required by law to protect its interest in the vehicle. Plaintiff's first lien is prominently displayed on the certificate of title which was retained in its possession, thereby giving to all at least constructive notice of its prior interest in the vehicle.

While defendant Enterline is guilty of nothing more than being a trusting person and presumably honest himself, it is *only* he in this case who *failed* to take all reasonable precautionary measures. Accordingly, it would be both unfair and in apparent disregard of legislative intent for this court to deny plaintiff the right to possession of the vehicle which

it reserved in the security agreement and protected on the title. (Emphasis supplied.)

It is difficult to stifle the noting of an "artful dodger" from a Charles Dickens novel when these facts reveal a Dodge dealer in the chain of events which leaves defendant empty-handed.

Accordingly, the court enters the following

## ORDER

And now, this January 19, 1984, it is hereby ordered, adjudged, and decreed, that plaintiff's motion for issuance of writ of seizure be granted, the writ of seizure to issue upon the filing by plaintiff of a replevin bond, with sufficient security, in double the amount of $4,100.*

---

*The court notes the agreement of the parties on the record that seizure of the vehicle by the sheriff will not be necessary unless defendant Enterline fails to post a counterbond within 72 hours of service of the writ of seizure.